UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| **DELORIS GASTON, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:16-cv-9** |
| | ) | |
| **LEXISNEXIS RISK SOLUTIONS INC., *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

Defendants LexisNexis Risk Solutions Inc. ("LNRS") and PoliceReports.US, LLC ("PRUS") (collectively, the "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully move this Court to dismiss the Class Action Complaint ("Complaint") filed by Deloris Gaston and Leonard Gaston (collectively, the "Plaintiffs").

## I. INTRODUCTION

Plaintiffs' Complaint purports to assert a putative nationwide class action based on Defendants' alleged violations of the Driver's Privacy Protection Act, 18 U.S.C. § 2721 *et seq.* ("DPPA"). Passed in 1994, the DPPA regulates a very narrow set of "personal information." For the DPPA to apply, the "personal information" has to be about an individual and "obtained by the department [of motor vehicles] in connection with a motor vehicle record." 18 U.S.C. § 2721(a). As a result, only if the information falls within very specific parameters does the DPPA even apply. Plaintiffs fail to allege facts that any information relating to them falls within these parameters and thus is subject to the requirements of the DPPA. For this reason alone the Complaint should be dismissed.

Indeed, to state a cognizable claim for relief under the DPPA, the burden is on the plaintiff to plead sufficient facts to establish four elements: that the defendant (1) knowingly (2) obtained, disclosed, or used "personal information," (3) from a "motor vehicle record," (4) for a purpose not permitted under the statute. *See Thomas v. George, Hartz, Lundeen, Fulmer*, 525 F.3d 1107, 1112 (11th Cir. 2008). Here, Plaintiffs' Complaint fails to allege any facts to support any of the above four elements.

Even though the Complaint has 98 numbered paragraphs, Plaintiffs only provide specifics in one subparagraph. (*See* Compl. ¶ 18(a).) In that single paragraph, Plaintiffs merely allege that they were involved in numerous vehicular accidents, and were legally obliged to provide their personal information as a result. There are however, no further details as to whether they provided this information to a state department of motor vehicles ("DMV"), or whether the only information at issue involved their alleged vehicular accidents. Instead, the Complaint consists of a series of legal conclusions that fail to provide any specific facts as to how Plaintiffs' personal information was obtained by a state DMV and thereafter disclosed improperly by Defendants. The federal pleading standards require more.

Nor should Plaintiffs be given an opportunity to amend their Complaint. Plaintiffs' claims appear to suggest that vehicular accident reports are somehow MVRs, i.e., "personal information" from a "motor vehicle record" disclosed by a state DMV. (*See* Compl. ¶¶ 2, 18(a), 53.) However, the DPPA does not apply to all information related to the operation of motor vehicles. Instead, the DPPA explicitly states that "personal information" obtained by the State DMV "***does not include information on vehicular accidents, driving violations, and driver's status***." 18 U.S.C. § 2725(3) (emphasis added). To construe "personal information" to include "information on vehicular accidents" is (1) contrary to the plain statutory language, (2)

inconsistent with congressional intent as demonstrated by established canons of statutory construction, and (3) contrary to public policy. Thus, any amendment would be futile and so should not be allowed.

For each of these reasons, Plaintiffs' Complaint should be dismissed for failing to state a claim for relief.

## II. THE COMPLAINT

Of the 98 paragraphs in the Complaint, the few facts alleged by Plaintiffs are contained in a single subparagraph:

> "a. Plaintiffs were involved in motor vehicle accidents in Mecklenburg County, North Carolina, or were owners of vehicles involved in accidents in Mecklenburg County. During the Class Period, Plaintiffs were legally obligated to provide personal and sensitive identifying information for such purposes required by law, an obligation that did not require the release of such to any individual or corporation that did not possess legal rights to access their motor vehicle records[.]" (Compl. ¶ 18(a).)

Without alleging where and how Defendants obtained Plaintiffs' "motor vehicle records," Plaintiffs allege that Defendants somehow obtained this information to use for marketing and solicitation purposes. (Compl. ¶ 18(b).) Plaintiffs thereafter make a plethora of conclusory allegations that do not pertain to them, as the supposed class representatives; instead, the remaining allegations only relate to the supposed purpose and legal requirements of the DPPA.

A review of the 98 Paragraphs in the Complaint makes the lack of factual allegations clear:

- Paragraphs 1 through 3 are introductory paragraphs containing only general allegations, without any specific details of how Plaintiffs have suffered the alleged injuries they claim under the DPPA;

- Paragraphs 4 through 7 introduce the parties;
- Paragraphs 8 through 17 allege proper jurisdiction and venue;
- Paragraph 18 contains the alleged "facts" specific to the incident, although the only section containing any actual factual allegations is Subparagraph 18(a), as quoted verbatim above. The remainder of the paragraph merely contains conclusive allegations that provide no specific details as to when these vehicular accidents involving Plaintiffs allegedly occurred, what details Plaintiffs allegedly provided, to whom Plaintiffs allegedly provided these details, and what information Defendants allegedly obtained and from whom, what information Defendants thereafter improperly "re-disclosed" or who received those reports;
- Paragraphs 19 through 50 provide legal opinions and conclusions about selective portions of the DPPA;[1]
- Paragraphs 51 through 92 contain class allegations, again without any specific details.

Indeed, looking at the entirety of the allegations in the Complaint, we only know that: (1) Plaintiffs were involved in motor vehicle accidents, (2) they provided information regarding the vehicular accidents to someone, and (3) this information was thereafter supposedly redisclosed by Defendants. As discussed further below, such allegations are insufficient for the purposes of stating a DPPA claim.

---

[1] The Court may ignore all legal conclusions couched as factual allegations in Plaintiffs' Complaint. *See Wenzel v. Knight*, No. 3:14-cv-432, 2015 U.S. Dist. LEXIS 70536, at *34 (E.D. Va. June 1, 2015) (citing *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Indeed, the Court should strike paragraphs 19 through 50 of Plaintiffs' Complaint. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."); *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 393 (D. Or. 1996) (granting motion to strike a legal conclusion because it "is an issue for the Court to resolve, with the assistance of the trier of fact").

## III. LEGAL STANDARD

A motion to dismiss tests the sufficiency of the plaintiffs' initial pleading and does not resolve contests surrounding the facts or the merits of a claim. *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Even under Fed. R. Civ. P. 8(a), however, the Court need not accept as true the legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments asserted in the complaint. *See E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d, 175, 180 (4th Cir. 2000); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Furthermore, a "pleading that offers 'legal conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive dismissal for failure to state a claim under Rule 12(b)(6), the "complaint's 'factual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Demetry v. Lasko Prods*., 284 F. App'x 14, 15 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). Therefore, a claim is "facially plausible" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## IV. ISSUES TO BE DECIDED

In deciding this Motion, the Court must consider the following issues:

1. Have Plaintiffs identified "information obtained by the [DMV] in connection with a motor vehicle record," as defined by the DPPA?
2. Have Plaintiffs pled sufficient allegations to state a viable cause of action, as required by the DPPA?

3. Is the accident information loosely identified by Plaintiffs the type of "information on vehicular accidents, driving violations, and driver's status" that is expressly excluded from application of the DPPA?

As Defendants will demonstrate, all three issues should be resolved in favor of Defendants.

## V. ANALYSIS

Because the only claim at issue in the Complaint is based entirely on the DPPA, a review of the relevant provisions of the statute is critical.

The DPPA, at 18 U.S.C. § 2721, begins by describing what information is subject to the subsequent permissible uses and states:

> (a) In General.—A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:
>
> > (1) *personal information*, as defined in 18 U.S.C. 2725(3), about any individual **obtained by** the department [of motor vehicles] in **connection with** a *motor vehicle record*, except as provided in subsection (b) of this section;
> >
> > …(omitted)…

The DPPA provides further clarification at 18 U.S.C. § 2725:

> In this chapter—
>
> > (1) "motor vehicle record" means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles;
> >
> > …(omitted)…
> >
> > (3) "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, **but does not include information on vehicular accidents**, **driving violations, and driver's status**.

The express language of the DPPA cannot be disputed, as Plaintiffs' own Complaint affirms. As Defendants will demonstrate herein, Plaintiffs have not even alleged that the information at issue is "about any individual obtained by the [DMV] in connection with a motor vehicle record," as provided by 18 U.S.C § 2721(a)(1). And even if Defendants have so done, Plaintiffs fail to allege why such information is not explicitly excluded from DPPA coverage as "information on vehicular accidents, driving violations, and driver's status," as provided by 18 U.S.C. § 2725(3).

## A. PLAINTIFFS FAIL TO ALLEGE THAT THE INFORMATION AT ISSUE IS "ABOUT ANY INDIVIDUAL OBTAINED BY THE DEPARTMENT OF MOTOR VEHICLES IN CONNECTION WITH A MOTOR VEHICLE RECORD."

To state a claim for relief under the DPPA, the burden is on the plaintiff to plead sufficient facts to establish four elements: that the defendant (1) knowingly (2) obtained, disclosed, or used "personal information," (3) from a "motor vehicle record," (4) for a purpose not permitted under the statute. *Thomas*, 525 F.3d at 1112 (11th Cir. 2008) ("[W]e conclude that the DPPA is silent on which party carries the burden of proof and, as such, the burden is properly upon the plaintiff."); *Wooten v. Virginia*, No. 6:14-CV-00013, 2015 U.S. Dist. LEXIS 55994, at *8 (W.D. Va. Apr. 29, 2015) (same). Indeed, as the authorizing provision of the DPPA provides, Plaintiffs have to allege that the "personal information" at issue is "about any individual obtained by the [DMV] in connection with a motor vehicle record." 18 U.S.C. § 2721(a)(1). *Accord*: *Reno v. Condon*, 528 U.S. 141, 146 (2000) ("[t]he Act also regulates the resale and redisclosure of drivers' personal information by private persons who have obtained the information *from a state DMV*") (emphasis added); *Siegler v. Best Buy Co. of Minn.*, 519 Fed. App'x 604, 605 (11th Cir. 2013) ("[a] plain reading of the DPPA makes clear that the Act was intended to prohibit only the disclosure or redisclosure of information originating from state

department of motor vehicles ('DMV') records"). Plaintiffs have not so done, and instead merely make the vague allegations that "[they] were legally obligated to provide personal and sensitive identifying information for such purposes required by law." (*See* Compl. ¶18(a).)

Critical to the elements for a DPPA claim, Plaintiffs also fail to specify: (a) to whom Plaintiffs provided information about the alleged accidents; (b) what relationship that person or agency has to the DMV, if any; (c) how the information was obtained by the DMV as part of a "motor vehicle record;" (d) how the "personal information" is not actually part of "information on vehicle accidents," even though it was provided in relation to a motor vehicle accident; (e) what information was provided to Defendants; (f) who provided the information to Defendants;[2] or (g) who allegedly received the record from Defendants for the purpose of direct marketing or solicitation. All of these facts are critical to establishing a cognizable claim for a DPPA violation, yet the Complaint is silent.[3]

Substantiated allegations as to the source for the information allegedly improperly disclosed are also critical because the DPPA only imposes liability on a defendant who "***knowingly*** obtains, discloses, or uses personal information, from a motor vehicle record," in an otherwise un-exempted transaction. 18 U.S.C. § 2724(a) (emphasis added); ***see also Pichler v.***

---

[2] This allegation is especially important because if the purported personal information was directly obtained from the Charlotte-Mecklenburg police department, then Defendants had a permissible use when assisting the agency in carrying out its open record law obligations as its eCommerce vendor. 18 U.S.C. § 2721(b)(1) (permits disclosure of personal information by "any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions"); ***see*** Decision and Order, *New Richmond News v. City of New Richmond*, Dkt. No 13-CV-000163, at 8 (St. Croix Cnty. Circuit Court, WI, March 20, 2014) ("The DPPA does not require the redaction of the information requested by Plaintiffs because such disclosure is permitted under § 2721(b) and the Wisconsin Open Records Law requires the City to respond to records requests and provide such information in the performance of official duties by the City."). A copy of this Order is attached hereto as Exhibit A.

[3] Counsel for Defendants met and conferred with counsel for Plaintiffs by telephone on March 30, 2016, and requested more specifics on such details. Plaintiffs refused.

*UNITE*, 228 F.R.D. 230, 241 (E.D. Pa. 2005) ("Plaintiffs concede that they must prove that . . . the [defendants] knew the information came from motor vehicle records[.]"). Plaintiffs' single paragraph of alleged facts does not provide any factual basis for their claims against Defendants for alleged violations of the DPPA. "[B]are allegations" of facts which do nothing more than mimic the language of the DPPA are insufficient as a matter of law. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' Complaint should be dismissed.

## B. ANY AMENDMENT WOULD BE FUTILE BECAUSE VEHICULAR ACCIDENT REPORTS ARE OUTSIDE THE DPPA'S DEFINITION OF "PERSONAL INFORMATION."

Because the Complaint states a single cause of action under the DPPA, this case starts and ends with a proper statutory interpretation of the DPPA. Here, the only facts that Plaintiffs allege are that they were involved in motor vehicle accidents in Mecklenburg County, North Carolina and were legally obligated to provide personal information about the accident for purposes required by law. (Compl. ¶ 18(a).) Such scant facts actually prove that the Complaint should be dismissed as a matter of law and any amendment would be futile. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (finding that leave to amend a pleading under Rule 15(a) can be denied when the amendment would be futile).

### 1. The plain language of the DPPA excludes information on vehicular accidents from the definition of "personal information."

"Statutory construction begins with the language of the statute, as 'the plain language of the statute in question is deemed the most reliable indicator of Congressional intent.'" *Chamber of Commerce of the U.S. v. BLRB*, 856 F. Supp. 2d 778, 787 (D.S.C. Apr. 13, 2012) (quoting *Soliman v. Gonzales*, 419 F.3d 276, 281–82 (4th Cir. 2005)); *see also Andrews v. United States*, 441 F.3d 220, 222 (4th Cir. 2006) ("The first step in determining the meaning of a statute is to examine the statute's plain language. In doing so, we look at the language itself, the specific

context in which the language is used, and the broader context of the statute as a whole.") (internal citations and quotation marks omitted).

Each section of a statute is to be read in reference to the whole act. *See John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 114 S. Ct. 517, 523 (1993). Statutory interpretation is a "holistic" endeavor. *See Smith v. United States*, 113 S. Ct. 2050, 2057 (1993). Thus, courts cannot interpret a provision in a way that would render other provisions of the act superfluous or unnecessary. *See Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1178 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

The only natural reading of the DPPA excludes information on vehicular accidents, *i.e.*, accident reports, from the purview of the DPPA. "Personal information" is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, *but does not include information on vehicular accidents, driving violations, and driver's status*." 18 U.S.C. § 2725(3) (emphasis added). The dependent clause, "including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information," does nothing more than provide examples of what constitutes "information which identifies an individual." But the final phrase provides clear exemptions from what is covered by the DPPA: "personal information" "*does not include information on vehicular accidents, driving violations, and driver's status*." 18 U.S.C. § 2725(3) (emphasis added).

Thus, it is clear from this language that Congress intended records regarding vehicular

accidents, driving violations, and driver's status to be outside the DPPA's restrictions on public access and use. Plaintiffs' claims here appear to concern only "information on vehicular accidents," (*see* Compl. ¶ 18(a)), and, as a matter of law, must be dismissed as falling outside the purview of the DPPA.

From the Complaint, it appears that Plaintiffs intend to argue that, despite the unambiguous carve out of "information on vehicular accidents," (Compl. ¶ 85), Congress somehow intended that this exception would not include information about the driver or owner of the vehicle involved in the accident. Initially, such a result would imply that Congress chose to include superfluous language in its definition of "personal information," contrary to established rules of statutory construction. *See Marx*, 133 S. Ct. at 1178. If it were Congress' intent to nonetheless always include information that identifies an individual, Congress would have ended the definition of *personal information* after the words ". . . disability information," and said nothing more. The exclusion of "*information on vehicular accidents, driving violations, and driver's status*" would be unnecessary and thus impermissible surplusage.

Likewise it would be absurd to argue that Congress included this exclusion to clarify that non-identifying information on "vehicular accidents, driving violations, and driver's status," such as the date of an accident or a yes/no for driver's status, is outside the definition of personal information. Again, there would be no need for an exclusion for non-identifying information since the definition already only covers "information that identifies an individual." However, if that was somehow the intent of Congress, then the DPPA is unconstitutionally vague since the DPPA does not clarify what fields of vehicular accident information might nonetheless be indentifying information and subject or not subject to the exception. *See Almendarez-Torres v. United States*, 523 U.S. 224, 237–38 (1998) (quoting *United States v. Jin Fuey Moy*, 241 U.S.

394, 401 (1916)) ("'[A] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.'"). Indeed, to have the meaning ascribed by Plaintiffs, the definition of "personal information" would have to be re-written as follows: "information that identifies an individual . . . but does not include information on vehicular accidents, driving violations, and driver's status ***[except to the extent the information identifies an individual]***." Congress did not so do. Thus, the meaning of the exclusion is clear – Congress intended to carve out all information on vehicular accidents, driving violations, and driver's status, including identifying information needed to use and understand these types of reports.

Congress' intent as expressed through the plain language is further clarified by considering all three types of records included within the string which makes up the exception. Because the exemption for vehicular accident information is contained within the same phrase as driving violations and driver's status, *see* 18 U.S.C. § 2725(3), its meaning should be derived from its association with these terms. *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) (The principle of *noscitur a sociis* is intended to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.") (citation and internal quotation marks omitted).

*The exemption for driver's status and driving violations inevitably must include information about the driver.* Driver's violations and status would be meaningless without knowing the identity of the driver. Indeed, the only conceivable use would be for "research activities and for use in statistical reports," which is already a DPPA permitted use. *See* 18 U.S.C. § 2721(b)(5). The rules of statutory construction mandate avoiding such results. *Jones v. United States*, No. 7:09-CV-106, 2011 U.S. Dist. LEXIS 10741, at *6–7 (E.D.N.C. Feb. 3, 2011)

(rules of statutory construction "require[] courts to bypass the plain meaning of a statute if it would lead to an absurd result."). Thus, by association, "information on vehicular accidents" must mean the entire record, including information which identifies an individual. *Yates*, 135 S. Ct. at 1085.

Indeed, other courts have found that "Congress did not intend 'information on vehicular accidents' to be included within the Act's prohibition of disclosure of 'personal information.'" *See Mattivi, v. Russell*, No. 01-WM-533, 2002 U.S. Dist. LEXIS 24409, *14 (D. Colo. Aug. 2, 2002). As a matter of law, Plaintiffs' claims involving information on vehicular accidents fall outside of the DPPA's definition of "personal information" and should be dismissed.

**2. The legislative history of the DPPA supports the construction of the Act to exclude accident reports from the scope of "personal information."**

If the scope of the "information on vehicular accidents" exception could somehow be considered unclear, then this Court should give deference to the Congressional intent as expressed in the legislative history. *See Nat'l Elec. Mfrs. Ass'n v. United States DOE*, 654 F.3d 496, 504 (4th Cir. 2011) ("[W]e ordinarily wade into a statute's legislative history only after deeming the statute ambiguous[.]"). Representative Moran, the sponsor of the bill, stated during congressional hearings: "It is very important to note that the amendment in no way affects access to accident information about the car or ***driver***. Nothing in this bill would stop **anyone** from finding out ***another person's*** driving record, accidents, or status." 103 Cong. Rec. H2522 (daily ed. Apr. 20, 1994) (statement of Rep. Moran) (emphasis added). Representative Moran's statements exemplify that the vehicular accident exemption under section 2725(3) encompasses information not only related to the accident, but also encompasses identifying information *about the driver* and others involved in the accident.

Representative Moran further indicated that the DPPA would <u>not</u> restrict the media's

access to motor vehicle related information. Since the DPPA does not include media access as a permissible use, the only way to achieve this goal is via the carve out for "information on vehicular accidents, driving violations, and driver's status." Specifically, Moran stated: "Reporters and private investigators will still have complete access to *all information* connected with the *operation of a motor vehicle*." *The Driver's Privacy Protection Act of 1993: Hearing on H.R. 3365 Before the Subcomm. on Civil and Constitutional Rights of the H. Comm. on the Judiciary*, 103rd Cong. (Feb. 4, 1994) (statement of Rep. Moran) (emphasis added).

Here, all Plaintiffs have identified is that they were involved in some vehicular accidents, and the information regarding such accidents was somehow disseminated. (Compl. ¶18(a).) Such allegations do not prove that the information is covered by the DPPA; instead the language of the DPPA makes clear that the information at issue falls outside the DPPA.

## C. RULES OF STATUTORY CONSTRUCTION REQUIRE THAT THE DPPA BE READ TO AVOID CONFLICTS WITH STATE LAWS.

Even if any ambiguity exists in the plain language of the DPPA, the Court should still exclude vehicular accident reports from the definition of personal information to avoid an obvious conflict with state open record laws. To hold otherwise would unnecessarily curb access to driver history, accident reports and driver's status by the media and other parties who have a significant public interest in (and current access to) that information, but would be denied access if the DPPA applied. Canons of statutory construction require that this Court avoid statutory interpretations that conflict with other statutes. *See Velez v. Dick Keffer Pontiac-GMC Truck, Inc.*, 551 S.E.2d 873, 876 (N.C. Ct. App. 2001) ("Interpretations that would create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible.") (citations omitted). Reading the DPPA in the manner proposed by Plaintiffs would preclude access to "information on vehicular accidents, driving violations, and

driver's status" and would conflict with the North Carolina open records statute. *See* N.C. GEN. STAT. § 20-166.1(i) (vehicular accident reports "are open to inspection by the general public at all reasonable times.").[4] Such an interpretation of the DPPA would preclude use of vehicular accident reports by persons who have historically had access to such information. For example, the media may use accident reports to prepare stories relevant to a driver's history. Prospective employers may also require access to these reports if, for example, they are hiring a driver for the company. Even individuals who want to make sure their children or elderly parents are entrusted to safe and licensed drivers may have a justifiable use for accident reports. But under Plaintiffs' broad interpretation of "personal information," each of these persons would be prohibited from accessing accident reports.

Congress did not intend such absurd results as recently acknowledged by an Arkansas state court. The court held that redacting personal information from vehicular accident reports was unnecessary when faced with a purported conflict between the DPPA and state open records laws. Op. and Order, ***Wren v. Arkansas State Police***, No. 60CV-15-2303, at 7 (Ark. Cir. Ct. June

[4] The North Carolina Attorney General issued an advisory opinion in 2005 regarding the application of the DPPA to certain motor vehicle records in view of North Carolina's Public Records Act. *See* Advisory Opinion: Drivers Privacy Protection Act, 2005 N.C. AG Lexis 1 (Feb. 9, 2005). The Attorney General concluded "that motor vehicle accident reports are public records, but should be released only after DMV has redacted personal identifying information in accordance with the DPPA." *Id*. at *6. However, the Attorney General did not fully analyze the plain language of the statute or any of the legislative history. As Defendants illustrate above, a complete analysis of the DPPA dictates that accident reports are completely exempted from the definition of "personal information." *See* Opinion, Office of the Attorney General of the State of Wisconsin, 2008 Wis. AG LEXIS 8, at *29 (Apr. 29, 2008) ("We believe it is reasonable to interpret this exclusion from the 'personal information' definition to mean that information such as driver's name, address, and telephone number are not encompassed in the personal information protected by the DPPA when that information is incorporated into a document such as an accident report or traffic citation."). Regardless, the North Carolina Attorney General's opinion should be given no deference by this Court. ***See Mojica v. Reno***, 907 F. Supp. 130, 180–82 (E.D.N.Y. 1997); ***Legal Opinions***, NORTH CAROLINA DEPARTMENT OF JUSTICE (last visited April 10, 2016), ***available at*** http://www.ncdoj.gov/About-DOJ/Legal-Services/Legal-Opinions.aspx ("[T]hese opinions do not have the full effect of law or court order[.]").

23, 2015).[5] In *Wren*, the plaintiff delivered a Freedom of Information Act ("FOIA") request to the Arkansas State Police to inspect accident reports. *Id.* at 5. The Arkansas state police refused to make the accident reports available without redaction of identifying information citing the DPPA as the basis. *Id.* at 2. The plaintiff filed his complaint arguing that "accident reports are public records" and Arkansas open record laws did "not allow for a blanket denial of the inspection of crash reports." *Id.* at 5. The Court ultimately enjoined the police department's redaction policy, finding it to be violative of the Arkansas FOIA statute. *Id.* at 7. This Court should similarly avoid an interpretation of the DPPA that conflicts with state open records law by adhering to the plain language of the DPPA and excluding accident reports from the definition of "personal information."

## VI. CONCLUSION

For the foregoing reasons, LexisNexis Risk Solutions Inc. and PoliceReports.US, LLC respectfully request that the Court (1) grant their Motion to Dismiss; and (2) grant them any other such relief as may be appropriate.

Dated: April 18, 2016

Respectfully submitted,

TROUTMAN SANDERS LLP

By: /s/ D. Kyle Deak ______________
D. Kyle Deak
N.C. State Bar No. 35799
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
Telephone: (919) 835-4133
Facsimile: (919) 829-8725
Email: kyle.deak@troutmansanders.com

[5] A copy of this Order is attached hereto as Exhibit B.

Ronald Irvin Raether, Jr.
Admitted *Pro Hac Vice*
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone: (949) 622-2722
Facsimile: (949) 622-2739
Email: ronald.raether@troutmansanders.com

Mark C. Mao
Admitted *Pro Hac Vice*
580 California Street, Suite 1100
San Francisco, CA  94104
Telephone: (415) 477-5700
Facsimile: (415) 477-5710
Email: mark.mao@troutmansanders.com

*Attorneys for Defendants LexisNexis Risk Solutions Inc. and PoliceReports.US, LLC*

## CERTIFICATE OF SERVICE

I certify that on this 18th day of April, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record:

David M. Wilkerson
Heather W. Goldstein
Larry S. McDevitt
The Van Winkle Law Firm
P.O. Box 7376
Asheville, NC 28802-7376
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
Email: dwilkerson@vwlawfirm.com
Email: hgoldstein@vwlawfirm.com
Email: lmcdevitt@vwlawfirm.com

Eugene C. Covington, Jr.
Covington, Patrick, Hagins, Stern & Lewis, P.A.
211 Pettigru Street
P.O. Box 2343
Greenville, SC 29601
Telephone: (864) 240-5502
Facsimile: (864) 240-5533
Email: gcovington@covpatlaw.com

*Attorneys for Plaintiffs*

By: /s/ D. Kyle Deak____________
D. Kyle Deak
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
Telephone: (919) 835-4133
Facsimile: (919) 829-8725
Email: kyle.deak@troutmansanders.com