**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**Statesville Division**
**Civil Action No. 5:16-cv-00009 – KDB-DCK**

| | |
|---|---|
| **DELORIS GASTON**, *et al.*,          ) | |
|         ) | |
|     **Plaintiffs,**     ) | |
|         ) | |
| **v.**         ) | |
|         ) | **MEMORANDUM IN SUPPORT** |
| **LEXISNEXIS RISK SOLUTIONS INC.**, *et al.*, ) | **OF JOINT MOTION FOR** |
|         ) | **PRELIMINARY APPROVAL** |
|     **Defendants.**    ) | **OF PROPOSED SETTLEMENT** |

Plaintiffs Leonard Gaston and Deloris Gaston (the "Plaintiffs") and Defendants LexisNexis Risk Solutions Inc. ("LNRS") and PoliceReports.US, LLC ("PRUS") (the "Defendants")[1] (collectively, the "Parties"), by counsel, respectfully submit this memorandum in support of their Joint Motion for Preliminary Approval of Proposed Settlement ("Motion"), in which they request this Court to enter an Order (1) granting preliminary approval of the proposed settlement; (2) conditionally certifying a class and subclass for settlement purposes only pursuant to Fed. R. Civ. P. 23(b)(2); (3) appointing Class Counsel for the settlement class and subclass; (4) appointing a settlement administrator for the purpose of providing the required notice under the Class Action Fairness Act, 28 U.S.C. § 1715, and (5) scheduling the Court's final fairness hearing for the proposed settlement.

## I.    INTRODUCTION

On January 12, 2016, Plaintiffs filed the present putative class action lawsuit for an alleged violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* ("DPPA"). The Parties

---

[1] "Defendants" as defined in the Settlement Agreement includes LNRS, PRUS, LexisNexis Claims Solutions Inc. and LexisNexis Coplogic Solutions Inc.

have engaged in three mediations with mediator Wayne P. Huckel. Through these mediation sessions, the Parties have reached a settlement that provides for certain business changes with respect to Defendants' disclosure of crash reports as reflected in the Settlement Agreement, which is attached to the Motion.[2]

The Parties now move this Court to certify a nationwide settlement class and subclass pursuant to Fed. R. Civ. P. 23(b)(2).[3] The Rule 23(b)(2) Settlement Class is composed of all persons who: (i) at any time within the four years prior to the date the Complaint was filed through the date of Final Judgment, (ii) had his or her personal information (including a driver identification number, name, address, or telephone number) appear on a Crash Report; and (iii) that Crash Report was available for purchase via an online solution supported, owned or operated by PoliceReports.US, LLC or LexisNexis Claims Solutions Inc. The Rule 23(b)(2) CMPD Settlement Subclass is composed of all persons who: (i) are members of the Rule 23(b)(2) Settlement Class, and (ii) whose Crash Report was prepared by the Charlotte-Mecklenburg Police Department ("CMPD"). The Rule 23(b)(2) settlement, if approved, would require Defendants to implement certain business changes impacting their disclosure of crash reports, which will represent a significant shift from current practices.

---

[2] All capitalized terms referenced herein shall have the same definitions and meanings of the defined terms set forth in the Settlement Agreement.

[3] On September 2, 2020, this Court granted in part and denied in part Plaintiffs' motion for class certification and certified a Rule 23(b)(2) injunctive relief class and subclass:

> North Carolina residents whose personal information (as defined by the DPPA) appears on a North Carolina form DMV-349 CMPD vehicle accident report that was created between January 12, 2012 and September 1, 2020 and disclosed by a Defendant to a third party without any contemporaneous record of a purpose permitted by the DPPA. The class does not include any person who gave consent to the disclosure of their personal information by a Defendant.

> Subclass – All members of the class whose related accident report indicates that their address in the report is the same as on their driver's license.

(Dkt. No. 148 at 34.)

The Parties believe that the settlement represents not only a fair, reasonable, and adequate resolution of the claims brought in this action but represents a new standard for the treatment of information on a crash report. The Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass meet all of the requirements for certification under Rule 23(b)(2) as settlement classes. For all these reasons, the Parties request that the Court enter the Proposed Order Granting Preliminary Approval of Proposed Settlement, which is attached hereto as **Exhibit A**.

## II. HISTORY OF THE LITIGATION AND THE MEDIATION

### A. Nature of the Case

PRUS assisted certain law enforcement agencies in providing the public with online access to crash reports via its eCommerce web portal (policereports.us), to fulfill the agencies' obligations under the states' public record laws. PRUS acted at the instruction and direction of the law enforcement agencies in disclosing crash reports. For example, PRUS designed its web portal based on the instruction of the agencies and the agencies determined to whom a crash report could be sold. Certain law enforcement agencies required PRUS to make crash reports available on a subscription basis, including CMPD. Customers who subscribed to the PRUS monthly subscription service paid a flat monthly fee and had access to the most recent 750 reports from the agency(ies) to which they subscribed. PRUS' eCommerce web portal extended the same level of service as what an agency's records department would have offered to involved parties to an accident. In other words, PRUS acted as the "virtual records desk" on behalf of the agencies in disclosing crash reports via its eCommerce web portal. [4]

---

[4] PRUS was acquired by LN Claims on August 4, 2014. The PRUS eCommerce web portal was subsequently sunset on April 1, 2018 as part of the normal course of business after the acquisition. LN Claims currently operates an eCommerce web portal (policereports.lexisnexis.com) (hereinafter, the "eCommerce Web Portal") that also provides the public with online access to crash reports on behalf of law enforcement agencies.

In their Amended Complaint, Plaintiffs allege that Defendants violated the DPPA by allegedly disclosing Plaintiffs' crash reports to third parties on the PRUS eCommerce web portal for the purposes of marketing and solicitation. (*See* Am. Compl. ¶¶ 22, 23.) Plaintiffs contend that crash reports are regulated by the DPPA, and thus, Defendants' disclosure of their crash reports for marketing and solicitation uses without Plaintiffs' express consent, violates the DPPA. *See* 18 U.S.C. § 2721(b)(13). In their Amended Complaint, Plaintiffs sought to represent the following class:

> All persons in the United States who, on or after, four (4) years prior to the date of this filed complaint, through the final disposition of this or any related actions (the "Class Period"), had their personal information from motor vehicle records maintained by their State Motor Vehicle Departments used to create a motor vehicle accident report, or whose personal information is contained within a motor vehicle accident report created by a State Motor Vehicle Department, and whose personal information was directly and knowingly obtained, used, re-disclosed, and/or resold, for purposes not authorized by the DPPA, and without their express consent, by the named Defendants.

(Am. Compl. ¶ 78.) Plaintiffs sought injunctive and equitable relief, compensatory, statutory and punitive damages, and an award of attorneys' fees and costs. Defendants denied Plaintiffs' allegations of wrongful conduct and damages and have disclaimed any wrongdoing or liability.

The DPPA regulates a very narrow set of "personal information." To state a cause of action under the DPPA, a plaintiff must prove that the defendant "knowingly obtain[ed], disclose[d] or use[d] personal information, *from a motor vehicle record* [i.e., a state Department of Motor Vehicles], *for a purpose not permitted* under" the statute. 18 U.S.C. § 2724(a) (emphasis added). As a result, only if the information falls within very specific parameters does the DPPA even apply. *See Dunkin v. Appriss, Inc.*, 266 F. Supp. 3d 1103, 1110 (N.D. Ind. 2017) (Congress extended privacy rights under the DPPA "narrowly and intentionally to protect information held by DMVs and disclosed by DMVs to other entities.").

Defendants have consistently and expressly taken the position that crash reports do not fall within the scope of the DPPA, including because: (1) "information on vehicular accidents" (i.e., crash reports) is an express carve-out from the definition of "personal information" under the DPPA, *see* 18 U.S.C. § 2725(3); (2) information on a crash report is not sourced from the Department of Motor Vehicles ("DMV") and thus is not a "motor vehicle record" under the DPPA, *see* 18 U.S.C. § 2725(1); and (3) regardless, Defendants are entitled to qualified immunity and otherwise had an express permissible purpose under the DPPA, namely Defendants were acting on behalf of law enforcement agencies in assisting the agencies in fulfilling their obligations under state public record laws, *see* 18 U.S.C. § 2721(b)(1). As a result, Defendants do not currently require customers on the eCommerce web portal to affirm an express DPPA permissible use before purchasing a crash report.

### B. Court's September 2, 2020 Order and Defendants' Subsequent Appeal

Plaintiffs moved for class certification on June 11, 2020. (Dkt. No. 101.) The Parties filed cross-motions for summary judgment on June 19, 2020. (Dkt. Nos. 122, 124.) Defendants opposed Plaintiffs' motions on various grounds. Over Defendants' objections and arguments, the Court certified a limited Rule 23(b)(2) injunctive relief class and subclass on September 2, 2020. (Dkt. No. 148.) The Court also granted summary judgment on Plaintiffs' claims for declaratory and injunctive relief with respect to the Rule 23(b)(2) subclass. (*Id*.)[5]

Defendants thereafter filed a notice pursuant to 28 U.S.C. §§ 1291-92 and the collateral order doctrine, to appeal to the United States Court of Appeals for the Fourth Circuit from the Order of the United States District Court for the Western District of North Carolina, entered on September 2, 2020 on September 8, 2020. (Dkt. No. 150.) Absent this settlement, Defendants

---

[5] On October 2, 2020, per the Parties' stipulation, the Court entered an Order and Stipulated Judgment extending the injunctive relief to the full certified Rule 23(b)(2) class. (Dkt No. 159.)

would have pursued their challenge of the Court's September 2, 2020 Order on appeal and otherwise. This settlement is not intended to prejudice in any way the Parties' right to raise any of the arguments that the Parties made in this case, including arguments decided by the district court in its interlocutory order of September 2, 2020, in any future litigation.

### C. Negotiations Leading to the Settlement Agreement

Through this long course of litigation spanning more than four years, Plaintiffs' counsel and Defendants' counsel have met in person for the sole purpose of mediation on two different occasions. The first such mediation effort took place on February 12, 2020, when the Defendants' outside counsel and in-house Vice President & Lead Litigation Counsel traveled to Charlotte, North Carolina for an in-person mediation with Wayne P. Huckel. The parties discussed a potential Rule 23(b)(2) injunctive relief structure. Thereafter, an additional in-person mediation session was held on March 4, 2020 in Charlotte, North Carolina with Wayne P. Huckel, where the parties further discussed potential settlement structures. The parties held a third mediation session via Zoom on October 7, 2020 again with Wayne P. Huckel.

There is no doubt that the settlement presented here for the Court's consideration is the result of these hard-fought, arm's-length negotiations among the Parties.

### III. THE TERMS OF THE PROPOSED SETTLEMENT

### A. Scope of the Class

The proposed settlement encompasses a Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass. The settlement would benefit every consumer nationwide who has had his or her personal identifying information listed on a crash report. The Parties recognized that the proposed settlement changes would inure to the benefit of class members because individuals identified on a crash report may again be identified on another crash report in the

future. Thus, to prevent the same issues and concerns regarding the disclosure of crash reports arising in the future, whether supportable in law or not, Defendants would need to agree to substantial changes to its business practices relating to the disclosure of crash reports on the eCommerce Web Portal. Accordingly, the Parties have agreed to certification of a Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass, as described more fully below and in the Settlement Agreement, for which Defendants will implement a substantial, nationwide program of injunctive relief that addresses the issues raised by Plaintiffs in the Amended Complaint as well as the Court's September 2, 2020 Order. The injunctive relief is a significant shift from Defendants' current practices concerning the disclosure of crash reports and the law enforcement agencies which they serve.

The Rule 23(b)(2) Settlement Class is defined as follows:

All persons who: (i) at any time within the four years prior to the date the Complaint was filed through the date of Final Judgment, (ii) had his or her personal information (including a driver identification number, name, address, or telephone number) appear on a Crash Report; and (iii) that Crash Report was available for purchase via an online solution supported, owned or operated by PoliceReports.US, LLC or LexisNexis Claims Solutions Inc.

The Rule 23(b)(2) CMPD Settlement Subclass is defined as follows:

All persons who: (i) are members of the Rule 23(b)(2) Settlement Class, and (ii) whose Crash Report was prepared by the CMPD.

Excluded from the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass are counsel of record (and their respective law firms) for any of the Parties, employees of Defendants, and any judge presiding over this action and their staff, and all members of their immediate families.

### B. The Proposed Injunctive Relief

Defendants have agreed to move jointly for the Court to enter, as part of the Final Judgment and Order, an Injunctive Relief Order attached as Exhibit A to the Settlement Agreement. Plaintiffs pursued this litigation to address certain practices relating to the disclosure of crash

7

reports to third parties for marketing and solicitation purposes. Defendants continue to contest whether crash reports are regulated by the DPPA and otherwise deny Plaintiffs' allegations. But, as part of the settlement, Defendants have agreed to implement certain business changes relating to the disclosure of crash reports on the eCommerce Web Portal to address Plaintiffs' claims. Specifically, Defendants will: (1) implement changes to prohibit the use of Crash Reports purchased on the eCommerce Web Portal for marketing and solicitation uses; (2) eliminate the Monthly Subscription Service; (3) limit the disclosure of crash reports; (4) log the users' use selection; and (5) implement employee education and training.

### C. The Release is Tailored to the Injunctive Relief

The scope of the release to which each Rule 23(b)(2) Settlement Class Member and Rule 23(b)(2) CMPD Settlement Subclass Member would be bound was a substantial point of negotiation. The Settlement Agreement narrowly tailors the release to be provided by Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members so that it is limited by the scope of the injunctive relief provided.

Specifically, the Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members do not release any individual claims for actual damages. Instead, any Rule 23(b)(2) Settlement Class Member or Rule 23(b)(2) CMPD Settlement Subclass Member may still pursue such claims after the approval of this settlement. Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members only release their equitable claims and claims for punitive damages to the extent available based on the DPPA and any analogous state statutes, and waive any and all pending and/or future DPPA claims that were or could have been brought in the litigation using the class action or mass action procedural device (regardless of the type of damages that would be sought in such a lawsuit). This waiver of the

class action and mass action procedural device is reasonable in light of the industry-changing injunctive relief that class members have achieved through the use of the class action device in this lawsuit.

### D. Class Administration and Notice to the Class

The Parties have agreed that notice is not required under Fed. R. Civ. P. 23(c)(2)(A) as the final injunctive relief applies generally to the mandatory Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass and individual claims for damages are not being released.

### E. CAFA Notice

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Defendants will send via Federal Express a notice of settlement to the appropriate federal and state officials under 28 U.S.C. §1715(b), no later than ten days after this filing, using the Settlement Administrator. Specifically, Defendants will send notices to the Attorney General of the United States and the Attorney General of each state. Defendants will file with the Court a proof of service after the notice pursuant to CAFA has been completed. The proposed form of CAFA Notice, which meets the requirements of 28 U.S.C. § 1715, is attached to the Settlement Agreement as Exhibit B. The Court is requested to approve the CAFA Notice and the method of delivery (via Federal Express) in its preliminary approval order.

### F. Attorneys' Fees and Service Awards

Plaintiffs and their counsel will ask the Court to approve the attorneys' fees and Class representative service awards. Both of these subjects – fees and service awards – were addressed in mediation only after the Parties had reached an agreement as to the recovery for the Settlement Class.

Those negotiations resulted in an agreement that an award for attorneys' fees, costs and other expenses in an amount up to $5,130,000.00 in the aggregate is reasonable for the relief obtained, subject to Court approval. This amount is paid entirely by Defendants. It represents the attorney fee amount that Defendants agree to pay without contest. In exchange, Plaintiffs' counsel has agreed not to seek a greater amount as to the Settlement Class.

The Parties have also agreed that the named Plaintiffs may ask the Court for an award of $10,000.00 each (total of $20,000.00) for their service as class representatives.

## IV. THE PROPOSED SETTLEMENT MEETS THE REQUIREMENTS OF FED. R. CIV. P. 23

The proposed settlement class must meet the requirements for certification under Fed. R. Civ. P. 23(a) and one of the subsections of 23(b). *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 423 (4th Cir. 2003). "[F]ederal courts should give Rule 23 a liberal rather than a restrictive construction" when considering a settlement. *Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 595–96 (W.D.N.C. 2010) (quoting *Gunnells*, 348 F.3d at 424); *see also In re A. H. Robins, Co., Inc.,* 880 F.2d 709, 740 (4th Cir. 1989) (holding that it was proper in determining certification to consider whether certification would "foster the settlement of the case with advantage to the Parties and with great savings in judicial time and services"). Further, when considering "a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

Defendants maintain that the putative class defined in the Amended Complaint could not be certified under Fed. R. Civ. P. 23 for trial purposes. The Parties agree, however, that the issues that Defendants believe would preclude certification for trial purposes do not preclude certification

of the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass for settlement purposes only.

### A. The Proposed Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass Meet Rule 23(a)'s Requirements

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies the requirements set forth in Rule 23, and thus may be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

#### 1. *Numerosity*

There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied. *Kelly v. Norfolk & W. Ry. Co*., 584 F.2d 34, 35 (4th Cir. 1978). In applying this rule, courts have consistently held that joinder is impracticable and numerosity is thus satisfied where the class is composed of hundreds of potential claimants; indeed, numerosity has been deemed sufficient as to a class with fewer than 100 members. *See, e.g., Cypress v. Newport News Gen. and Non-Sectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (stating that a class of 18 members met numerosity requirement); *West v. Cont'l Auto., Inc.*, No. 3:16-cv-

502-FDW-DSC, 2017 U.S. Dist. LEXIS 87382, at *3 (W.D.N.C. June 7, 2017) (finding that approximately sixty (60) class members was sufficient to satisfy the numerosity requirement).

There is no question that the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass meet the numerosity requirement. Although it is not feasible at this time to identify all class members, because the Rule 23(b)(2) Settlement Class includes every individual nationwide who has had his or her personal identifying information listed on a crash report regardless of the source of the information and the Rule 23(b)(2) CMPD Settlement Subclass includes all persons in the Rule 23(b)(2) Settlement Class whose Crash Report was prepared by the CMPD, the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass satisfy the numerosity requirement.

2. *Commonality*

The commonality requirement is "not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and thus is easily met in most cases." Conte, 1 NEWBERG ON CLASS ACTIONS 5th § 3:18; *see also Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (noting that "[t]he commonality requirement is relatively easy to satisfy") (quoting *Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 187 (D. Md. 2003)). This requirement is easily met here for settlement purposes. The Settlement Agreement treats all Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members alike in granting them the substantial benefits of the injunctive relief program. Two of the key issues in this case, whether the DPPA applies to crash reports (without taking into account the source of the information), and if so, whether Defendants' anticipated disclosure of crash reports to third parties who may use the

information for marketing and solicitation purposes will violate the DPPA, are common to all members of the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass.

### 3. *Typicality*

In order for Rule 23's typicality requirement to be met, a named plaintiff "may proceed to represent the class only if the plaintiff establishes that his claims or defenses are 'typical of the claims or defenses of the class.'" *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466 (4th Cir. 2006) ("The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'"). Typicality is satisfied as long as the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiffs proof of his own individual claim. That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Id.* at 466–67.

Here, there is a sufficient link between Plaintiffs' claims and those of the absent class members because Plaintiffs allege that Defendants violated the DPPA by disclosing their crash reports for a purpose not permitted under the DPPA, and further allege potential future violations of the DPPA given Defendants continue to operate the eCommerce web portal. Plaintiffs' success on essential elements of their claims, such as whether the DPPA applies to crash reports and whether Defendants had a permissible use for disclosing Plaintiffs' crash reports, would advance the claims of the members of the proposed class. Accordingly, the typicality requirement is met.

### 4. *Adequacy of Representation*

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the representative plaintiff's

13

attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the Class. *See, e.g., Rehberg v. Flowers Baking Co. of Jamestown, LLC*, No. 3:12-cv-00596-MOC-DSC, 2015 U.S. Dist. LEXIS 36929, at *31 (W.D.N.C. Mar. 24, 2015) (citing *In re Se. Hotel Properties Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 606 (W.D.N.C. 1993)).

In that connection the qualifications and experience of proposed class counsel are as follows:

Larry S. McDevitt

Mr. McDevitt is the Senior Partner and Past President of the Van Winkle Law Firm. He has over 50 years of trial experience in the Federal Courts in civil and criminal matters. He has extensive experience as lead and liaison counsel in class action litigation. He is admitted to practice in numerous Federal District and Appellate Courts, including the United States Supreme Court and is a Permanent Member of the Judicial Conference for the United States Fourth Circuit. He is a fellow of both the American College of Trial Lawyers and the International Society of Barristers, a former Mayor of Asheville, past President of the North Carolina Bar Association, past President of the UNC Law School Alumni Association, and served as North Carolina's State Delegate to the ABA House of Delegates. He is Past Chair of the ABA Standing Committee on Pro Bono and Public Service and was also a member of the ABA Board of Governors. He was the initial Chair of the Civil Justice Reform Act Advisory Committee for the U.S. District Court for the Western District Court of North Carolina, and has served as chair or member of several Federal Court committees. Mr. McDevitt is recognized by Best Lawyers in America, Legal Elite, Super Lawyers and several other peer nominated organizations for his expertise in the trial and

management of complex cases. He has been identified by peer review groups as one of the top class action/anti-trust/litigation attorneys in North Carolina.

Mr. McDevitt served as liaison counsel in the Middle District of North Carolina in *In Re Cotton Yarn Antitrust Litigation* (Docket No. 1:04MD1622) and in the Western District of North Carolina in *In Re Polyester Staple Antitrust Litigation* (W.D.N.C. MDL Docket No. 3:03cv1516). Other class action cases in which he and the Firm have appeared or currently appear as lead or liaison counsel include: *White v. James B. Hunt Jr.* (W.D.N.C.); *Creekmore v. Brown & Williamson Tobacco Corp.* (Buncombe County, NC); *Gasperson v. U. S. Sprint* (W.D.N.C.); *Prentiss v. Allstate* (Haywood County, NC); *Lazy Horseshoe Ranch v. USA* (D. Neb); *McElreath v. Premark International, Inc.* (Buncombe County, NC); *Goetsch v. Household Finance Corporation* (W.D.N.C.); *Hartman v. Charter Behavioral Health Systems, LLC* (W.D.N.C.); *Piazza's Carpet v. Hickory Springs, et. al.* (W.D.N.C. 5:10-cv-11) prior to the cases being consolidated by the MDL panel in another district. Mr. McDevitt currently serves as liaison counsel in *Morris et al. v. Bank of America*, case No. 3:18-cv-157-RJC (W.D.N.C.) and class counsel in Peters v. Aetna Inc et. al., 1:15-cv-00109-MR (W.D.N.C.). Mr. McDevitt also currently serves as Co-Chair of the Class Certification Committee in *In Re Blue Cross Blue Shield* (MDL 2406) (N.D.A.L 2:13-cv-20000). The lead case in that action was originated and filed by McDevitt and Van Winkle along with the Boies, Schiller and Hausfeld law firms in this District and in this Division, prior to its being sent by the Multidistrict Litigation Panel to the Northern District of Alabama, Southern Division. Following transfer of that case to Alabama, two of his associate counsel, David Boies and Michael Hausfeld, were named as Co-Lead Counsel in the Blue Cross/Blue Shield Litigation and McDevitt was named as Co-Chair of the Class Certification Committee.

15

David M. Wilkerson

Mr. Wilkerson is a Senior Partner in the Firm with over 20 years of experience in civil litigation practice. He is admitted to practice in numerous Federal Districts and is licensed in both North Carolina and South Carolina. He is currently involved in numerous class action cases in North Carolina and around the country. Mr. Wilkerson is also experienced in complex litigation. His other current complex class action cases include serving as co-lead class counsel in *Morris et al. v. Bank of America*, case No. 3:18-cv-157 (W.D.N.C); liaison class counsel in *In Re Sanderson and Koch Broiler Chicken Grower Litigation*, No. 7:10-cv-00031 (E.D.N.C); co-counsel for the class in *Gettys Bryant Millwood, et al. v. State Farm*, District of South Carolina, Case No. 19-cv-01445; class counsel in *In Re Broiler Chicken Grower Litigation*, Case No. 17-v-033 (E.D.O.K); and class counsel in *Reaves v. Crescom Bank*, 2:20-cv-00254 (D.S.C). He was appointed interim co-liaison counsel (with Mr. McDevitt) in *Piazza's Carpet v. Hickory Springs, et. al.* (W.D.N.C. 5:10-cv-11), prior to the cases being consolidated by the MDL panel in another district. Other recent class cases include *In Re Cast Iron Soil Pipe and Fittings Antitrust Litigation* (E.D.T.N 1:14-md-02508), and *Peters v. Aetna, Inc., et. al.*, 1:15-cv-00109 (W.D.N.C). Mr. Wilkerson serves on the Discovery Committee in *In Re Blue Cross Blue Shield* (MDL 2406) (N.D.A.L 2:13-cv-2000), and, along with Mr. McDevitt, participated in the filing of that litigation. He served on the section council of the Antitrust and Complex Business Disputes Law Section of the North Carolina Bar Association from 2011 to 2017, where he chaired both the Legislative and Pro Bono Committees. He recently served on the North Carolina Business Court Rules Committee.

Eugene C. Covington, Jr.

Mr. Covington is the former Senior Managing Partner of the Covington, Patrick, Hagins, Stern & Lewis, LLC Law firm in Greenville, S.C. His current firm is Eugene C. Covington, Jr.

P.A.  He has over 44 years of civil trial practice.  He is admitted to practice in the S.C. Supreme

Court and all state courts (1976); S.C. Federal District Court (1977); Fourth Circuit Court of

Appeals (1979); and United States Supreme Court (1986). He has litigated several thousand civil

cases in South Carolina's state, federal, trial and appellate courts.  He is a fellow of the American

College of Trial Lawyers (2011); American Board of Trial Advocates (Diplomate); American

Association for Justice (ATLA); South Carolina Association for Justice (SCTLA); and the

Greenville County Bar Association (President, 1985).

He is listed in The Best Lawyers in America, 1985 - present.  He has an AV/AV Preeminent

rating by Martindale-Hubbell from 1981 to the present.  He was selected as Lawyer of the Year,

Personal Injury Litigation, Greenville, S.C., by Best Lawyers in America, 2009 & 2012.  He was

included as a member of the Top 25 Lawyers in South Carolina by South Carolina Super Lawyers

in 2008.  He was included in the Best Lawyers in the Upstate by the Greenville Magazine in

2006.  He is a co-author of *The Law of Automobile Insurance in South Carolina*, 2nd through 5th

Editions, and *South Carolina Damages'* chapter entitled  "Collateral Source" in 2004, both

published by the South Carolina Bar.


Christopher L. Cogdill

Mr. Cogdill practices in his own Firm, Christopher L. Cogdill, P.A. in which he is the

sole principal.  He has practiced for over twenty-one years in Greenville, South Carolina. While

his practice primarily involves transactional work and not litigation, Mr. Cogdill initiated the

development of this case in 2014, spending hundreds of hours researching the case prior to filing

and has diligently worked many hours investigating and obtaining evidence after filing. Mr.

Cogdill has ample experience and resources to prosecute this case.

Plaintiffs have no interests that are antagonistic to the interests of the Rule 23(b)(2) Settlement Class or Rule 23(b)(2) CMPD Settlement Subclass and are unaware of any actual or apparent conflicts of interest between them and the Rule 23(b)(2) Settlement Class or Rule 23(b)(2) CMPD Settlement Subclass.  Moreover, the Settlement preserves the right of individual Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members to bring an individual suit for actual damages if they so choose.

Having satisfied the requirements as to numerosity, commonality, typicality, and adequacy, the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass are appropriate for certification under Rule 23(a).

### B. The Proposed Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass Meets Rule 23(b)'s Requirements

If the Rule 23(a) requirements are met, the proposed class must then fall into one of the categories set out in Rule 23(b) to warrant certification.  *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014).  As discussed above, the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass are injunctive-relief-only settlement classes pursuant to Rule 23(b)(2), which applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *Thorn v. Jefferson-Pilot Life Ins. Co.,* 445 F.3d 311, 329 (4th Cir. 2006).  More simply stated, Rule 23(b)(2) certification is proper "if members of the proposed class would benefit from the injunctive relief."  *Cuming v. S.C. Lottery Comm'n,* No. 3:05-cv-03608-MBS, 2008 WL 906705, at *6 (D.S.C. March 31, 2008) (citing *Thorn,* 445 F.3d at 331); *see also Bratcher v. Nat'l Standard Life Ins. Co. (In re Monumental Life Ins. Co.)*, 365 F.3d 408, 416 (5th Cir. 2004).  The Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass in this case satisfy both of these requirements.

Plaintiffs allege that Defendants disclose crash reports for purposes not permitted under the DPPA. Here, the Settlement Agreement treats all Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members alike in granting them the substantial benefits of the injunctive relief program. Protecting Plaintiffs' interests in the disclosure of their crash reports as proscribed in the injunctive relief is analogous to the classic Rule 23(b)(2) cases in which "various actions in the civil-rights field" dealing with discrimination were certified as Rule 23(b)(2) class actions, so that class-wide discrimination could be remedied with a class-wide program of relief. *See* Fed. R. Civ. P. 23 advisory committee's note. Such injunctive relief is a powerful, efficient, and effective way of protecting broad interests like privacy, or the treatment of information, when out-of-pocket monetary losses are sometimes difficult to prove based on the violation of such interests. While Defendants maintain that they have always acted in compliance with the law, the fact that the Settlement modifies Defendants' conduct as to the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass as a whole makes it appropriate for certification under Rule 23(b)(2). *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2557 (2011) ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.") (citation omitted); *see also Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11-CV-754, 2014 U.S. Dist. LEXIS 124415, at *34 (E.D. Va. Sept. 5, 2014), *affirmed by Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) ("The Court finds that certification of the Rule 23(b)(2) class in this case is appropriate because the injunctive relief sought is indivisible and applicable to all members of the Rule 23(b)(2) class.") (citation and internal quotation marks omitted). The injunctive relief will provide a direct benefit to the Rule

23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members going forward.

## V.     THE SETTLEMENT IS FAIR AND ADEQUATE

"There is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhof, Inc.,* No. 1:08cv1310, 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Hinkle v. Matthews*, No. 2:15-cv-13856, 2018 U.S. Dist. LEXIS 196130, at *6 (S.D. W. Va. Nov. 15, 2018) ("The complexity, expense, and duration of class action litigation are factors that mitigate in favor of preliminary approval of a settlement."); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (noting that "[c]omplex litigation . . . can occupy a court's docket for years on end, depleting the resources of the Parties and the taxpayers while rendering meaningful relief increasingly elusive").  When reviewing a proposed settlement, the Court "must take into account 'the clear policy in favor of encouraging settlements . . . particularly in an area where voluntary compliance by the Parties over an extended period will contribute significantly toward ultimate achievement of statutory goals.'"  *Lipuma,* 406 F. Supp. 2d at 1314 (quoting *Patterson v. Newspaper & Mail Deliverers' Union,* 514 F.2d 767, 771 (2d Cir. 1975)).

Federal Rule of Civil Procedure 23 requires Court review of the resolution of a class action such as this one.  Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e)  Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during the settlement negotiations.  *See In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR(3), 2010 U.S. Dist. LEXIS 68619, at *3 (E.D.N.C. June 11, 2010) (citing *In re Jiffy Lube Secs.*

*Litig.,* 927 F.2d 155, 158 (4th Cir. 1991)). The Court may approve a settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a class action settlement is committed to the "'sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances.'" *Urbaniak v. Stanley*, No. 5:06-CT-3135-FL, No. 5:07-CT-3145-FL, 2010 U.S. Dist. LEXIS 142939, at *15 (E.D.N.C. Aug. 27, 2010) (quoting *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986)). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (quoting *S. Carolina Nat'l Bank v. Stone,* 139 F.R.D. 335, 339 (D.S.C. 1991)).

The primary concern for the Court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *Jiffy Lube,* 927 F.2d at 158. At the preliminary approval stage, the Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *see also Manual for Complex Litigation (Fourth)* ("MCL"), § 21.632 (4th ed. 2004). The Fourth Circuit has bifurcated this analysis into consideration of the fairness of settlement negotiations and the adequacy of the consideration to the class. *Jiffy Lube,* 927 F.2d at 158–59. However, at the preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval." *Scott v. Family Dollar Stores, Inc.*, No. 3:08-cv-00540-MOC-DSC, 2018 U.S. Dist. LEXIS 41908, at *10 (W.D.N.C. Mar. 14, 2018); *Horton v. Merrill Lynch, Pierce, Fenner & Smith,* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota Antitrust Litigation,* 564 F. Supp. 1379, 1384 (D. Md. 1983)).

### A. The Settlement Is Fair

The Fourth Circuit has set forth the factors to be used in analyzing a class settlement for fairness: (1) the posture of the case at the time the proposed settlement was reached, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue. *Jiffy Lube,* 927 F.2d at 158–59.

The settlement reached in this case was the result of a fair process. The present action has been pending for over four years. The Parties participated in many telephonic meet and confer discussions regarding the merits of Plaintiffs' claim, and mediated the issues over the course of several mediation sessions. Courts have found that, where a settlement is the result of genuine arm's-length negotiations, there is a presumption that it is fair. *See, e.g., Ray v. Mechel Bluestone, Inc.,* 2018 U.S. Dist. LEXIS 40677, at *10 (S.D. W. Va. Mar. 13, 2018) (citing *In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768 (3d Cir. 1995)); *Brown v. Lowe's Cos.*, 2016 U.S. Dist. LEXIS 192451, at *8 (W.D.N.C. Nov. 1, 2016).

Plaintiffs also obtained substantial discovery in this case sufficient to support their position that the settlement is the best and most appropriate means for resolving this case. The extensive discovery and motion practice in this case provided each side with the additional insight to evaluate the merits, and laid the groundwork for the arm's-length, contentious negotiations that resulted in the settlement.

Finally, counsel is highly experienced in investigation and/or the prosecution of consumer class action litigation and endorse the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See Jiffy Lube, 927 F.2d at 159; Sims v. BB&T Corp.*, No. 1:15-CV-732, No. 1:15-CV-

841, 2019 U.S. Dist. LEXIS 75837, at *16 (M.D.N.C. May 6, 2019); *In re MicroStrategy Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001).

### B.  The Settlement Terms Are Adequate and Reasonable

In an analysis of the adequacy of a proposed settlement, the relevant factors to be considered may include: (1) the relative strength of the case on the merits, (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, (5) the degree of opposition to the proposed settlement, (6) the posture of the case at the time settlement was proposed, (7) the extent of discovery that had been conducted, (8) the circumstances surrounding the negotiations, and (9) the experience of counsel in the substantive area and class action litigation. *See Jiffy Lube,* 927 F.2d at 159; *West v. Cont'l Auto., Inc.*, No. 3:16-cv-00502, 2018 U.S. Dist. LEXIS 26404, at *10 (W.D.N.C. Feb. 5, 2018).

### 1.  *Plaintiffs' claim is heavily disputed and would encounter substantial defenses.*

Defendants have disputed Plaintiffs' DPPA claim since the inception of this case, including the initial question of whether the DPPA applies to crash reports.  The resolution of the outstanding issues, regardless of which party ultimately would prevail at trial, would require protracted adversarial litigation and appeals at substantial risk and expense.  Indeed, Defendants appealed the Court's September 2, 2020 interlocutory order and intended to pursue that appeal absent this settlement.  Defendants have also already prevailed against similar classwide DPPA claims, which highlights the significant risks that Plaintiffs face in continuing to litigate.  *See Pavone v. Meyerkord & Meyerkord, LLC*, 321 F.R.D. 314 (N.D. Ill. 2017) (denying certification of DPPA putative class action; ultimately settled on an individual basis).

2. *Continuing this litigation will result in significant additional and unjustifiable burdens on the class and subclass, Defendants and the Court.*

Aside from the potential that either side will lose at trial, the Parties anticipate incurring substantial additional costs in pursuing this litigation further. The level of additional costs would significantly increase as the appellate process proceeded and any effort that might be required if the matter is remanded for further proceedings. Thus, the likelihood of substantial future costs favors approving the proposed settlement. *Sims*, 2019 U.S. Dist. LEXIS 75837 at *17; *Horton*, 855 F. Supp. at 833.

3. *Similar claims pursued by class members.*

Despite the size of the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass, only one consumer to date is pursuing a class-wide claim that will be resolved through this settlement. *See Hatch v. LexisNexis Risk Solutions Inc., et al.*, 3:19-cv-00449 (W.D.N.C.) ("*Hatch*"). Given the claims preserved by the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass under the Settlement Agreement, the plaintiff in *Hatch* however will be able to continue to pursue his claim for actual damages on an individual basis.

4. *The case was at a proper posture for settlement.*

The Parties have been litigating Plaintiffs' claims for more than four years. The Plaintiffs had a complete understanding from formal and informal discovery as to Defendants' business practices and what defenses as to liability and as to class certification would be faced. As argued above, each of the remaining elements of "adequacy" under *Jiffy Lube* are more than met. The negotiations were self-evidently arms-length, with settlement made possible only through the considerable efforts of an experienced mediator.

Given this analysis and the possibility that Plaintiffs and class members ultimately will not prevail on their claims at trial or on appeal, the *Jiffy Lube* factors weigh heavily in favor of

the adequacy and reasonableness of the settlement.

## VI.    RULE 23(b)(2) DOES NOT MANDATE NOTICE

Neither Rule 23 nor the case law requires individualized, mailed notice for a Rule 23(b)(2) settlement class, where class members do not have the opportunity to opt out of the settlement and are not required to take any affirmative action to receive the benefits of the settlement.  Federal Rule of Civil Procedure 23(c)(2)(A) is explicit that even a litigated Rule 23(b)(2) class does not require any notice.  Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (2), the court *may* direct appropriate notice to the class.") (emphasis added); *see also* ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.311 (4th ed. 2004) (stating that notice in Rule 23(b)(2) actions is "within the district judge's discretion" and that "[i]f notice is appropriate, it need not be individual notice because, unlike a Rule 23(b)(3) class, there is no right to request exclusion from Rule 23(b)(1) and (b)(2) classes").  Unlike class actions certified under Rule 23(b)(3), which require individual notice to class members and the opportunity to opt out of the settlement, class actions certified under Rule 23(b)(2) ordinarily do not require individual notice to class members because there is greater cohesion of interests in a Rule 23(b)(2) class, as individual damage claims are not at stake.  *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("Notice (and exclusion opportunity) is not required in Rule 23(b)(2) actions."); 7B Charles Alan Wright *et al.,* FEDERAL PRACTICE AND PROCEDURE § 1793 (3d ed. 2006) (stating that while Rule 23(b)(3) classes require mandatory notice, notice is not as important for Rule 23(b)(2) classes "because the class typically will be more cohesive"); Fed. R. Civ. P. 23 advisory committee's note (2003 Amendments) (explaining that "[t]he authority to direct notice to class members in a (b)(1) or (b)(2) class should be exercised with care" because

there is no right to request exclusion and because of the potentially "cripple[ing] cost of providing notice).

Here, the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass is mandatory and thus Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members will not be permitted to opt out. Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members also do not release their individual claims for actual damages. Accordingly, the Parties have agreed that notice is not required.

## VII.    CONCLUSION

The Settlement presents an excellent result for individuals and genuine relief to the Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members in the form of business changes regarding Defendants' disclosure of crash reports. In return, the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass release any and all equitable claims and claims for punitive damages based on the DPPA and any analogous statute statutes, and waive any and all pending and/or future DPPA claims that were or could have been brought in the litigation using the class action or mass action procedural device. The Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members will still be able to pursue individual actions for actual damages. The settlement is not intended to prejudice in any way the Parties' right to raise any of the arguments that the Parties made in this case, including arguments decided by the district court in its interlocutory order of September 2, 2020, in any future litigation. The proposed Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass satisfy the requirements of Rule 23(a) and (b).

Accordingly, the Parties respectfully move for an Order (1) granting preliminary approval of the proposed settlement, (2) conditionally certifying the Rule 23(b)(2) Settlement Class and

Rule 23(b)(2) CMPD Settlement Subclass, (3) appointing Class Counsel, (4) appointing a settlement administrator for the purpose of providing the required notice under the Class Action Fairness Act, 28 U.S.C. § 1715, and (5) scheduling the Court's final approval hearing.

**PLAINTIFFS**

By: /s/ Larry S. McDevitt
Larry S. McDevitt
David M. Wilkerson
The Van Winkle Law Firm
P.O. Box 7376
Asheville, NC 28802-7376
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
Email: dwilkerson@vwlawfirm.com
Email: lmcdevitt@vwlawfirm.com

Eugene C. Covington, Jr.
Eugene C. Covington, Jr. P.A. .
211 Pettigru Street
Greenville, SC 29601
Telephone: (864) 240-5502
Facsimile: (864) 240-5533
Email: gcovington@covpatlaw.com

**DEFENDANTS**

By: /s/ Ronald Irvin Raether, Jr.
Ronald Irvin Raether, Jr.
Admitted *Pro Hac Vice*
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: (949) 622-2722
Facsimile: (949) 622-2739
Email: ron.raether@troutman.com

Julie Diane Hoffmeister
Admitted *Pro Hac Vice*
Troutman Sanders, LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1448
Facsimile: (804) 697-1339
Email: julie.hoffmeister@troutman.com

D. Kyle Deak
N.C. State Bar No. 35799
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
Telephone: (919) 835-4133
Facsimile: (919) 829-8725
Email: kyle.deak@troutmansanders.com

Christopher L. Cogdill
Christopher L. Cogdill P.A.
1318 Haywood Road Bld E
Greenville, SC 29615
Telephone: (864) 233-7170
Facsimile: (864) 233-7789
Email: chris@cogdill-law.com

*Attorneys for Plaintiffs*

Cindy D. Hanson
Admitted *Pro Hac Vice*
Troutman Sanders LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3830
Facsimile: (404) 885-3900
Email: cindy.hanson@troutman.com

*Attorneys for Defendants LexisNexis Risk Solutions Inc. and PoliceReports.US, LLC*