**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**Case No.: 5:16-cv-00009-KDB-DCK**

| | | |
|---|---|---|
| Deloris Gaston and Leonard Gaston, et al. | **)** **)** **)** | |
| Plaintiffs, | **)** **)** | |
| v. | **)** **)** | **JOINT BRIEF IN SUPPORT OF JOINT** **MOTION FOR FINAL APPROVAL OF** |
| LexisNexis Risk Solutions, Inc., et al. | **)** **)** | **CLASS SETTLEMENT** |
| Defendants. | **)** **)** | |

Plaintiffs Leonard Gaston and Deloris Gaston (the "Plaintiffs"), individually and on behalf of the class, and Defendants LexisNexis Risk Solutions Inc. ("LNRS") and PoliceReports.US, LLC ("PRUS") (the "Defendants")[1] (collectively the "Parties") have filed a joint motion (the "Motion"), contemporaneous herewith, seeking approval of a proposed settlement of this case, including Plaintiffs' individual and class claims. This brief is submitted in support of that Motion.

---

[1] "Defendants" as defined in the Settlement Agreement includes LNRS, PRUS, LexisNexis Claims Solutions Inc. and LexisNexis Coplogic Solutions Inc.

## I.    Introduction

On January 12, 2016, Plaintiffs filed the present putative class action lawsuit for an alleged violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* ("DPPA"). After years of discovery, the parties engaged in three mediations with the mediator, Wayne P. Huckel. Through these mediation sessions, the Parties reached a settlement that provides for certain business changes with respect to Defendants' disclosure of crash reports as reflected in the Settlement Agreement, which is attached to the Motion.

The Plaintiffs filed a Class Action Amended Complaint on May 12, 2016 (Dkt. No. 21). The Class Action Amended Complaint described a single putative class. It sought injunctive and equitable relief, compensatory, statutory and punitive damages, and an award of attorneys' fees and costs. Defendants denied each of the claims asserted against them in this action and any liability to the putative class.

The Plaintiffs moved for class certification on June 11, 2020, (Dkt. No. 101), and the Parties filed cross-motions for summary judgment on June 19, 2020. (Dkt. Nos. 122, 124). Following extensive briefing and oral argument, the Court entered an Order on September 2, 2020 granting in part and denying in part the motion for class certification, granting in part and denying in part Plaintiffs' motion for summary judgment and denying Defendants' motion for summary judgment (Dkt. No. 148).

With respect to class certification, the Court declined to certify the nationwide, statewide and Rule 23(b)(1) and 23(b)(3) money damages classes sought by Plaintiffs but certified a limited class and subclass under Federal Rule of Civil Procedure 23(b)(2) to consider Plaintiffs' claim for injunctive relief under the DPPA. On the parties' cross motions for summary judgment, the Court held that North Carolina accident reports that indicate that the address that appears in

the report is the same as on a driver's license are "motor vehicle records" both under the statute. In addition, the Court found undisputed evidence existed that at least some of those reports were used for an impermissible purpose. The Court awarded Plaintiffs summary judgment on their claim for declaratory and injunctive relief. However, finding disputed fact issues, the Court denied Plaintiffs' motion for summary judgment on their claim for liquidated damages. Finally, the Court denied Defendants' motion for summary judgment. The Parties thereafter filed their respective notices of appeal from the September 2, 2020 Order to the United States Court of Appeals for the Fourth Circuit (Dkt. Nos. 150, 158). On October 2, 2020, per the Parties' stipulation, the Court entered an Order and Stipulated Judgment extending the injunctive relief to the full certified Rule 23(b)(2) class. (Dkt No. 159). This Stipulation and Judgment left pending only the Plaintiffs' individual claims for liquidated damages of $2500 each, which the Court stayed in the interest of judicial economy pending the Parties' appeals. The Parties represent to the Court that absent their settlement, they would have pursued their respective challenges of the Court's final judgments on appeal and otherwise.

With respect to the process of their settlement, the Parties first participated in a full-day mediation in Charlotte, North Carolina on February 12, 2020. Both sides set out their positions in substantive presentations to the mediator, Wayne P. Huckel. The Parties again mediated with Mr. Huckel on March 4, 2020. The Parties held a third mediation session via Zoom on October 7, 2020 again with Mr. Huckel. The Parties' mediation efforts were ultimately successful and produced a proposed resolution of this litigation. On November 3, 2020, the Parties filed a Joint Motion and supporting Memorandum for Preliminary Approval of Proposed Settlement (Dkt. No. 163). In that Motion and the Supplemental Memorandum filed on December 15, 2020 (Dkt. No. 165), the Parties asked this Court to conditionally certify a settlement class and subclass

3

pursuant to Fed. R. Civ. P. 23(b)(2), appoint class counsel, appoint a settlement administrator for the purpose of providing the required notice under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), approve a notice program to class members, and schedule a final fairness hearing. On January 22, 2021, in response to questions and issues raised by the Court, the parties submitted a second revised Settlement Agreement and Release. Finally, on January 25, 2021, this Court granted the Parties' Motion for Preliminary Approval of the Proposed Settlement and conditionally certified the settlement class pending final approval of the settlement (Dkt. No. 169).

## II.    Final Certification of Settlement Class and Subclass

The Parties now move this Court to grant final certification of a settlement class and subclass pursuant to Fed. R. Civ. P. 23(b)(2). The Rule 23(b)(2) Settlement Class is composed of all persons who: (i) at any time within the four years prior to January 12, 2016, the date the Complaint was filed, through the date of Final Judgment, (ii) had his or her personal information (including a driver identification number, name, address, or telephone number) appear on a Crash Report; and (iii) that Crash Report was available for purchase via an online solution supported, owned or operated by PoliceReports.US, LLC or LexisNexis Claims Solutions Inc. The Rule 23(b)(2) CMPD Settlement Subclass is composed of all persons who: (i) are members of the Rule 23(b)(2) Settlement Class, and (ii) whose Crash Report was prepared by the Charlotte-Mecklenburg Police Department ("CMPD"). Excluded from the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass are counsel of record (and their respective law firms) for any of the Parties, employees of Defendants, and any judge presiding over this action and their staff, and all members of their immediate families. The Rule 23(b)(2) settlement, if approved, would require Defendants to implement certain business changes impacting their

disclosure of Crash Reports, which will represent a significant shift from current practices. The Parties believe that the settlement represents not only a fair, reasonable, and adequate resolution of the claims brought in this action, but also represents a new standard for the treatment of information on a Crash Report nationwide.

A proposed settlement class must meet the requirements for certification under Fed. R. Civ. P. 23(a) and one of the subsections of 23(b). *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 423 (4th Cir. 2003). "[F]ederal courts should give Rule 23 a liberal rather than a restrictive construction" when considering a settlement. *Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 595– 96 (W.D.N.C. 2010) (quoting *Gunnells*, 348 F.3d at 424); *see also In re A. H. Robins, Co., Inc.,* 880 F.2d 709, 740 (4th Cir. 1989) (holding that it was proper in determining certification to consider whether certification would "foster the settlement of the case with advantage to the Parties and with great savings in judicial time and services"). Further, when considering "a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

A. **The Proposed Rule 23(b)(2) Settlement Class and Rule23(b)(2) CMPD Settlement Subclass Meet Rule 23(a)'s Requirements**

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. In considering a settlement, the first question for the Court is whether a settlement class satisfies the requirements set forth in Rule 23, and thus may be certified for settlement purposes. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

1. *Numerosity*

There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied. *Kelly v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978). In applying this rule, courts have consistently held that joinder is impracticable and numerosity is thus satisfied where the class is composed of hundreds of potential claimants; indeed, numerosity has been deemed sufficient as to a class with fewer than 100 members. *See, e.g., Cypress v. Newport News Gen. and Non-Sectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (stating that a class of 18 members met numerosity requirement); *West v. Cont'l Auto., Inc.*, No. 3:16-cv-502-FDW-DSC, 2017 U.S. Dist. LEXIS 87382, at *3 (W.D.N.C. June 7, 2017) (finding that approximately sixty (60) class members was sufficient to satisfy the numerosity requirement).

There is no question that the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass meet the numerosity requirement. Because the Rule 23(b)(2) Settlement Class includes every individual nationwide who has had his or her personal identifying information listed on a crash report regardless of the source of the information and the Rule 23(b)(2) CMPD Settlement Subclass includes all persons in the Rule 23(b)(2) Settlement Class whose Crash Report was prepared by the CMPD, the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass satisfy the numerosity requirement.

6

### 2. *Commonality*

The commonality requirement is "not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and thus is easily met in most cases." Conte, 1 NEWBERG ON CLASS ACTIONS 5th § 3:18; *see also Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (noting that "[t]he commonality requirement is relatively easy to satisfy") (quoting *Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 187 (D. Md. 2003)). This requirement is easily met here for settlement purposes. The Settlement Agreement treats all Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members alike in granting them the substantial benefits of the injunctive relief program. Two of the key issues in this case, whether the DPPA applies to crash reports (without taking into account the source of the information), and if so, whether Defendants' anticipated disclosure of crash reports to third parties who may use the information for marketing and solicitation purposes will violate the DPPA, are common to all members of the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass.

### 3. *Typicality*

In order for Rule 23's typicality requirement to be met, a named plaintiff "may proceed to represent the class only if the plaintiff establishes that his claims or defenses are 'typical of the claims or defenses of the class.'" *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466 (4th Cir. 2006) ("The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'"). Typicality is satisfied as long as the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim. That is not to say that

typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Id.* at 466–67.

Here, there is a sufficient link between Plaintiffs' claims and those of the absent class members because Plaintiffs allege that Defendants violated the DPPA by disclosing their crash reports for a purpose not permitted under the DPPA, and further allege potential future violations of the DPPA given that Defendants continue to operate the eCommerce web portal. Plaintiffs' success on essential elements of their claims, such as whether the DPPA applies to crash reports and whether Defendants had a permissible use for disclosing Plaintiffs' crash reports, would advance the claims of the members of the proposed class. Accordingly, the typicality requirement is met.

4. *Adequacy of Representation*

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the Class. *See, e.g., Rehberg v. Flowers Baking Co. of Jamestown, LLC*, No. 3:12-cv-00596-MOC-DSC, 2015 U.S. Dist. LEXIS 36929, at *31 (W.D.N.C. Mar. 24, 2015) (citing *In re Se. Hotel Properties Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 606 (W.D.N.C. 1993)). As cited in the Motion for Preliminary Approval for Settlement, Motion for Appointment of Class Counsel, and Motion for Attorneys' fees, class counsel are qualified, experienced, and able to conduct the proposed litigation as shown by the results achieved in this case.

The Named Plaintiffs have no interests that are antagonistic to the interests of the Rule 23(b)(2) Settlement Class or Rule 23(b)(2) CMPD Settlement Subclass and are unaware of any

actual or apparent conflicts of interest between them and the Rule 23(b)(2) Settlement Class or Rule 23(b)(2) CMPD Settlement Subclass. Moreover, the Settlement preserves the right of individual Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members to bring an individual suit for actual damages if they so choose.

Having satisfied the requirements as to numerosity, commonality, typicality, and adequacy, the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass are appropriate for final certification under Rule 23(a).

## III. The Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass Meets Rule 23(b)'s Requirements

If the Rule 23(a) requirements are met, the proposed class must then fall into one of the categories set out in Rule 23(b) to warrant certification. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). The Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass are injunctive-relief-only settlement classes pursuant to Rule 23(b)(2), which applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Thorn v. Jefferson-Pilot Life Ins. Co.,* 445 F.3d 311, 329 (4th Cir. 2006). More simply stated, Rule 23(b)(2) certification is proper "if members of the proposed class would benefit from the injunctive relief." *Cuming v. S.C. Lottery Comm'n,* No. 3:05-cv-03608-MBS, 2008 WL 906705, at *6 (D.S.C. March 31, 2008) (citing *Thorn,* 445 F.3d at 331); *see also Bratcher v. Nat'l Standard Life Ins. Co. (In re Monumental Life Ins. Co.)*, 365 F.3d 408, 416 (5th Cir. 2004). The Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass in this case satisfy both of these requirements.

Plaintiffs allege that Defendants disclosed crash reports for purposes not permitted under the DPPA. Here, the Settlement Agreement treats all Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members alike in granting them the substantial benefits of the injunctive relief program. Protecting Plaintiffs' interests in the disclosure of their crash reports as proscribed in the injunctive relief is analogous to the classic Rule 23(b)(2) cases in which "various actions in the civil-rights field" dealing with discrimination were certified as Rule 23(b)(2) class actions, so that class-wide discrimination could be remedied with a class-wide program of relief. *See* Fed. R. Civ. P. 23 advisory committee's note. Such injunctive relief is a powerful, efficient, and effective way of protecting broad interests like privacy, or the treatment of information, when out-of-pocket monetary losses are sometimes difficult to prove based on the violation of such interests. While Defendants maintain that they have always acted in compliance with the law, the fact that the Settlement modifies Defendants' conduct as to the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass as a whole makes it appropriate for certification under Rule 23(b)(2). *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2557 (2011) ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.") (citation omitted); *see also Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11-CV-754, 2014 U.S. Dist. LEXIS 124415, at *34 (E.D. Va. Sept. 5, 2014), *affirmed by Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) ("The Court finds that certification of the Rule 23(b)(2) class in this case is appropriate because the injunctive relief sought is indivisible and applicable to all members of the Rule 23(b)(2) class.") (citation and internal quotation marks omitted). The injunctive relief

will provide a direct benefit to the Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members going forward.

## V.     THE SETTLEMENT IS FAIR AND ADEQUATE

"There is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.,* No. 1:08cv1310, 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Hinkle v. Matthews*, No. 2:15-cv-13856, 2018 U.S. Dist. LEXIS 196130, at *6 (S.D. W. Va. Nov. 15, 2018) ("The complexity, expense, and duration of class action litigation are factors that mitigate in favor of preliminary approval of a settlement."); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (noting that "[c]omplex litigation . . . can occupy a court's docket for years on end, depleting the resources of the Parties and the taxpayers while rendering meaningful relief increasingly elusive"). When reviewing a proposed settlement, the Court "must take into account 'the clear policy in favor of encouraging settlements . . . particularly in an area where voluntary compliance by the Parties over an extended period will contribute significantly toward ultimate achievement of statutory goals.'" *Lipuma,* 406 F. Supp. 2d at 1314 (quoting *Patterson v. Newspaper & Mail Deliverers' Union,* 514 F.2d 767, 771 (2d Cir. 1975)).

Federal Rule of Civil Procedure 23 requires Court review of the resolution of a class action such as this one. Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during the settlement negotiations. *See In re Red Hat, Inc. Sec. Litig.*, No.

5:04-CV-473- BR(3), 2010 U.S. Dist. LEXIS 68619, at *3 (E.D.N.C. June 11, 2010) (citing *In re Jiffy Lube Secs. Litig., 927 F.2d 155, 158 (4th Cir. 1991)). The Court may approve a settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a class action settlement is committed to the "'sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances.'" *Urbaniak v. Stanley*, No. 5:06-CT-3135-FL, No. 5:07-CT- 3145-FL, 2010 U.S. Dist. LEXIS 142939, at *15 (E.D.N.C. Aug. 27, 2010) (quoting *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986)). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (quoting *S. Carolina Nat'l Bank v. Stone,* 139 F.R.D. 335, 339 (D.S.C. 1991)).

The primary concern for the Court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *Jiffy Lube,* 927 F.2d at 158. The Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *see also Manual for Complex Litigation (Fourth)* ("MCL"), § 21.632 (4th ed. 2004). The Fourth Circuit has bifurcated this analysis into consideration of the fairness of settlement negotiations and the adequacy of the consideration to the class. *Jiffy Lube,* 927 F.2d at 158–59. The Court need only find that the settlement is within "the range of possible approval." *Scott v. Family Dollar Stores, Inc.*, No. 3:08-cv-00540- MOC-DSC, 2018 U.S. Dist. LEXIS 41908, at *10 (W.D.N.C. Mar. 14, 2018); *Horton v. Merrill Lynch, Pierce, Fenner & Smith,* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota Antitrust Litigation,* 564 F. Supp. 1379, 1384 (D. Md. 1983)).

When a district court preliminary approves a settlement after a hearing, the proposed settlement enjoys a presumption of fairness. *See Berkley v. U.S.*, 59 Fed.Cl. 675, 681

(2004) ("Settlement proposals enjoy a presumption of fairness afforded by a court's preliminary fairness determination."); *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("This preliminary determination establishes an initial presumption of fairness....");*Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) (accord); *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (accord).

## A.    The Settlement Is Fair

The Fourth Circuit has set forth the factors to be used in analyzing a class settlement for fairness: (1) the posture of the case at the time the proposed settlement was reached, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue. *Jiffy Lube,* 927 F.2d at 158–59.

The settlement reached in this case was the result of a fair process. The present action has been pending for over five years. The Parties participated in many telephonic meet and confer discussions regarding the merits of both the Plaintiffs' claims and the Defendants' defenses, and mediated the issues over the course of several mediation sessions. Courts have found that, where a settlement is the result of genuine arm's-length negotiations, there is a presumption that it is fair. *See, e.g., Ray v. Mechel Bluestone, Inc.,* 2018 U.S. Dist. LEXIS 40677, at *10 (S.D. W. Va. Mar. 13, 2018) (citing *In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768 (3d Cir. 1995)); *Brown v. Lowe's Cos.*, 2016 U.S. Dist. LEXIS 192451, at *8 (W.D.N.C. Nov. 1, 2016).

Plaintiffs also obtained substantial discovery in this case sufficient to support their position that the settlement is the best and most appropriate means for resolving this case. The extensive discovery and motion practice in this case provided each side with the additional

insight to evaluate the merits, and laid the groundwork for the arm's-length, often contentious negotiations that resulted in the settlement.

Finally, Plaintiffs' counsel is highly experienced in investigation and/or the prosecution of consumer class action litigation and endorse the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See Jiffy Lube, 927 F.2d at 159; Sims v. BB&T Corp.*, No. 1:15-CV-732, No. 1:15-CV- 841, 2019 U.S. Dist. LEXIS 75837, at *16 (M.D.N.C. May 6, 2019); *In re MicroStrategy Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001).

### B.      The Settlement Terms Are Adequate and Reasonable

In an analysis of the adequacy of a proposed settlement, the relevant factors to be considered may include: (1) the relative strength of the case on the merits, (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, (5) the degree of opposition to the proposed settlement, (6) the posture of the case at the time settlement was proposed, (7) the extent of discovery that had been conducted, (8) the circumstances surrounding the negotiations, and (9) the experience of counsel in the substantive area and class action litigation. *See Jiffy Lube,* 927 F.2d at 159; *West v. Cont'l Auto., Inc.*, No. 3:16-cv-00502, 2018 U.S. Dist. LEXIS 26404, at *10 (W.D.N.C. Feb. 5, 2018).

*1. Plaintiffs' claim is heavily disputed and would encounter substantial defenses.*

Defendants have disputed Plaintiffs' DPPA claim since the inception of this case, including the initial question of whether the DPPA applies to crash reports. The resolution of the

outstanding issues, regardless of which party ultimately would prevail at trial, would require protracted adversarial litigation and appeals at substantial risk and expense. Indeed, Defendants appealed the Court's September 2, 2020 interlocutory order and intended to pursue that appeal absent this settlement. Defendants have also already prevailed against similar classwide DPPA claims, which highlights the significant risks that Plaintiffs face in continuing to litigate. *See Pavone v. Meyerkord & Meyerkord, LLC*, 321 F.R.D. 314 (N.D. Ill. 2017) (denying certification of DPPA putative class action; ultimately settled on an individual basis).

      2.      *Continuing this litigation will result in significant additional and unjustifiable burdens on the class and subclass, Defendants and the Court.*

Aside from the potential that either side will lose at trial, the Parties anticipate incurring substantial additional costs in pursuing this litigation further. The level of additional costs would significantly increase as the appellate process proceeded and any effort that might be required if the matter is remanded for further proceedings. Thus, the likelihood of substantial future costs favors approving the proposed settlement. *Sims*, 2019 U.S. Dist. LEXIS 75837 at *17; *Horton*, 855 F. Supp. at 833.

      3.      *Similar claims pursued by class members.*

Despite the size of the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass, only one consumer to date pursued a class-wide claim that would have been resolved through this settlement. *See Hatch v. LexisNexis Risk Solutions Inc., et al.*, 3:19-cv-00449 (W.D.N.C.) ("*Hatch*"). Given the claims preserved by the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass under the Settlement Agreement, the plaintiff in *Hatch* settled his claim for actual damages on an individual basis with Defendants.

4. *The case was at a proper posture for settlement.*

The Parties have been litigating Plaintiffs' claims for more than five years. The Plaintiffs had a complete understanding from formal and informal discovery as to Defendants' business practices and what defenses as to liability and class certification would be faced. As argued above, each of the remaining elements of "adequacy" under *Jiffy Lube* are more than met. The negotiations were self-evidently arm's-length, with settlement made possible only through the considerable efforts of an experienced mediator.

Given this analysis and the possibility that Plaintiffs and class members ultimately will not prevail on their claims at trial or on appeal, the *Jiffy Lube* factors weigh heavily in favor of the adequacy and reasonableness of the settlement.

## IV. Notice for This Rule 23(b)(2) Settlement Class

The Court approved American Legal Claim Services LLC ("ALCS") as the Settlement Administrator for the purpose of providing the required notice under CAFA and administering the Notice Program. ALCS has extensive and specialized experience and expertise in class-action settlements and notice programs.

Notice to class members upon settlement of class claims should be conducted in a "reasonable manner." See Fed. R. Civ. P. 23(e)(1)(B). "[S]ettlement notices should be delivered or communicated to class members in the same manner as certification notices." Manual for Complex Litig., Fourth, § 21.312 ("Manual"). Under Rule 23(c)(2)(A), "the court may direct appropriate [certification] notice to the class." Fed. R. Civ. P. 23(c)(2)(A). "If [certification] notice is appropriate, it need not be individual notice because, unlike a Rule 23(b)(3) class, there is no right to request exclusion from Rule 23(b)(1) and (b)(2) classes." Manual, § 21.311; *see*

*also* Wright and Miller's Federal Practice and Procedure, Civil § 1786 ("The first specific question to be dealt with in determining the quality of the notice typically is whether individual notice must be given. In actions under Rules 23(b)(1) and 23(b)(2), the court is only directed to give 'appropriate notice to the class,' leaving the type of notice discretionary."). Notice programs that circulate settlement information via publication methods are reasonable in conjunction with a Rule 23(b)(2) class. *See, e.g., Berry v. LexisNexis Risk & Info. Analytics Group, Inc.*, No 3:11-cv-754, 2014 U.S. Dist. LEXIS 124415, at *6 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) (approving a Rule 23(b)(2) class settlement with a notice plan employing publication via multiple print and online media platforms, purchasing related search terms with major search engines, and a settlement website and toll-free telephone number with settlement-related information).

As outlined in the Settlement Agreement, the required Notice Plan consists of four primary components: (1) a settlement website; (2) a call center; (3) notice by print publication; and (4) publication via digital and social media channels. The settlement website was established and enabled class members to access a host of information regarding the class settlement. That information includes important settlement documents such as the Settlement Agreement, the Long-Form Notice (in both English and Spanish), and the Preliminary Approval Order. In addition, the class settlement website includes a section for frequently- asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement when the final approval hearing is scheduled, when the Final Judgment and Order has been entered, and when the Effective Date is expected or has been reached.

Class members now have access to a call center facilitated by ALCS that is available 24 hours a day. The toll-free telephone number provides class members with access to recorded

information, in both English and Spanish, related to the class settlement website. The Notice

Plan also provides for the purchase of a 1/8-page advertisement in the nationwide edition of USA

Today to appear twice over a one-month period. The 1/8-page advertisement provides space for

roughly 800 words, which provides ample room for a description of the case and how to access

additional information via the settlement website and call center. The digital and social media

strategy employs working with Facebook and Google to develop and place digital and social

media advertisements over a six-week period to notify potential settlement class members about

the settlement.

The social media campaign has been running since March 1, 2021, and will continue

through April 12, 2021.  As of March 25th, the Settlement Administrator reports that the

advertising of the settlement has reached approximately 57 million people through

advertisements on Google and Facebook.  In addition, a 1/8 inch advertisement was published in

USA Today on March 25, and the same advertisement will run again on April 8th.  The toll free

phone number has been active since February 10, 2021, and the settlement website has been

active since February 16.  So far, the Settlement Administrator has received no letters and six

emails.  The Settlement Administrator responded to each email by providing further information

about the settlement.  No objections to the settlement have been received as of March 25, 2021.

## VII.    CONCLUSION

The Settlement presents an excellent result for individuals and genuine relief to the Rule

23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members in

the form of business changes regarding Defendants' disclosure of crash reports. In return, the

Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass release any and all

equitable claims and claims for punitive damages based on the DPPA and any analogous

statutes, and waive any and all pending and/or future DPPA claims that were or could have been brought in the litigation using the class action or mass action procedural device. The Rule 23(b)(2) Settlement Class Members and Rule 23(b)(2) CMPD Settlement Subclass Members will still be able to pursue individual actions either for liquidated damages or for actual damages sustained before the Effective Date, subject to the waiver of the class action and mass action procedural devices. The settlement is not intended to prejudice in any way the Parties' right to raise any of the arguments that the Parties made in this case, including arguments decided by the district court in its interlocutory order of September 2, 2020, in any future litigation. The proposed Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass satisfy the requirements of Rule 23(a) and (b).

Accordingly, the Parties respectfully move for an Order (1) granting final approval of the proposed settlement, and (2) final certification of the Rule 23(b)(2) Settlement Class and Rule 23(b)(2) CMPD Settlement Subclass.

**PLAINTIFFS**

By: /s/ David M. Wilkerson
David M. Wilkerson
Larry S. McDevitt
The Van Winkle Law Firm
P.O. Box 7376
Asheville, NC 28802-7376
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
Email: dwilkerson@vwlawfirm.com
Email: lmcdevitt@vwlawfirm.com

Eugene C. Covington, Jr.
Eugene C. Covington, Jr. P.A.
211 Pettigru Street
P.O. Box 2343
Greenville, SC 29601
Telephone: (864) 240-5502
Facsimile: (864) 240-5533
Email: gcovington@covpatlaw.com

**DEFENDANTS**

By: /s/ Ronald Irvin Raether, Jr.
Ronald Irvin Raether, Jr.
Admitted *Pro Hac Vice*
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: (949) 622-2722
Facsimile: (949) 622-2739
Email: ron.raether@troutman.com

Joshua Daniel Davey
Troutman Sanders
301 S. College Street
34th Floor
Charlotte, NC 28202
704-916-1503
 Fax: 704-998-4051
 Email: Joshua.Davey@troutman.com

Julie Diane Hoffmeister
Admitted *Pro Hac Vice*
Troutman Sanders, LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1448
Facsimile: (804) 697-1339
Email: julie.hoffmeister@troutman.com

D. Kyle Deak
N.C. State Bar No. 35799
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
Telephone: (919) 835-4133
Facsimile: (919) 829-8725
Email: kyle.deak@troutmansanders.com

Christopher L. Cogdill
Christopher L. Cogdill P.A.
1318 Haywood Road Bld E
Greenville, SC 29615
Telephone: (864) 233-7170
Facsimile: (864) 233-7789
Email: chris@cogdill-law.com

*Attorneys for Plaintiffs*

Cindy D. Hanson
Admitted *Pro Hac Vice*
Troutman Sanders LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3830
Facsimile: (404) 885-3900
Email: cindy.hanson@troutman.com

*Attorneys for Defendants LexisNexis Risk
Solutions Inc. and PoliceReports.US, LLC*